Nora L. STAPP, Plaintiff,

v.

**OVERNITE TRANSPORTATION CO., Defendant.**

No. CIV. A. 96–2320–GTV.

United States District Court,
D. Kansas.

Feb. 5, 1998.

Steven A. Fehr, Donald R. Aubry, Dale L. Ingram, Jolley, Walsh & Hager, P.C., Kansas City, MO, for Plaintiff.

David P. Madden, Fisher, Patterson, Sayler & Smith, Overland Park, KS, William T. Cranfill, Jr., Jay L. Grytdahl, Blakeney & Alexander, Charlotte, NC, Ann Munson Steins, for Defendant.

### *MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

In this action, plaintiff claims that defendant subjected her to disparate treatment based on her gender, hostile work environment sexual harassment, and retaliation, all in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq* . Plaintiff also brings state law claims alleging outrage, assault, and battery. The case is before the court on defendant's motion for summary judgment (Doc. 54). For the reasons set forth below, defendant's motion is denied.

## I. *Factual Background*

The following facts are either uncontroverted or based on evidence viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported in the record are omitted.

Defendant is an interstate carrier of general commodity, less-than-truck-load freight. On August 8, 1988, defendant hired plaintiff's husband, Danny Stapp, as a "road driver" to transport freight between defendant's various terminals. On May 18, 1989, defendant hired plaintiff as a road driver. Since that time, plaintiff and her husband have worked as a team and jointly operated a sleeper cab. Plaintiff and her husband bid on, and were assigned, the transport route between Kansas City, Kansas and Salt Lake City, Utah.

### A. Facts Concerning Disparate Treatment Claim

The bulk of the facts dealing with plaintiff's disparate treatment claim concern her inability to gain equal access to toilet and shower facilities at defendant's various terminals and service centers. It is uncontested that plaintiff stopped at defendant's service centers in Oakland, Seattle, Las Vegas, Portland, Sacramento, Des Moines, Denver, Salt Lake City, and Kansas City, Kansas. According to defendant, separate restroom facilities are provided for males and females at each of these terminals. On-site shower facilities are available to both males and females· at unisex facilities at the Oakland, Portland, Denver, and Salt Lake City terminals.[1] Shower facilities are not available to

---

1. At the January 28, 1998 hearing on defendant's motion for summary judgment, defendant admitted the "unisex" showers are actually men's showers that women are allowed to use.

either sex at the Seattle, Las Vegas, Sacramento, and Des Moines terminals. And at the Kansas City terminal, there are separate shower facilities for both male and female employees.

Despite this apparent equality in the availability of facilities, plaintiff claims that she faced the following disparate treatment while using or attempting to use defendant's facilities:

1. Although plaintiff has access to the women's restrooms in Salt Lake City, the facilities are in a part of the building that is not well lit.

2. In Salt Lake City, the plaintiff must, at times, wait for long periods of time until the restroom is empty before using the shower.

3. When plaintiff has used the shower at Salt Lake City, men have kicked the door open and torn down her sign indicating that a woman was in the shower.

4. In Salt Lake City, plaintiff, while waiting to use the shower, has been exposed to male truck drivers walking naked in the sleeping room.

5. When plaintiff asked one of defendant's Denver terminal supervisors where to find the woman's restroom, she was told to use the "little brown building with a moon on it."

6. In Kansas City, plaintiff must have a key to gain access to the separate women's facilities. At times, when she does not have her key, plaintiff is unable to use the women's facilities and must use the men's. As a result, men have walked in on her using the men's facilities.

7. Plaintiff was not allowed to use the men's shower facilities in Portland in 1994.

8. Plaintiff was not allowed to use the toilet facilities at the Sacramento terminal in 1994.

9. Plaintiff was assaulted in the women's restroom in the Salt Lake City terminal in 1996.

10. In defendant's Reno terminal, plaintiff was denied the opportunity to use any of the toilet facilities.

Plaintiff also alleges the following incidents of disparate treatment based on denial of mechanical assistance because she was a woman:

1. In the winter or early spring of 1996, the brake lines on plaintiff's truck froze. A dispatcher told plaintiff to drag the truck to the shop. When plaintiff refused to do so, the dispatcher requested to speak to her husband.

2. In 1994 or 1995, plaintiff reported that a hazardous spill had occurred. The dispatcher requested to speak to plaintiff's husband who was sleeping at the time. Plaintiff refused to wake up her husband.

3. Sometime in 1991 or 1992, plaintiff was told by a dispatcher to find a man to check the oil in her truck.

4. In 1991 or 1992, plaintiff complained to a mechanic that something was wrong with her truck. The mechanic complained that plaintiff was always "bitching about something," and requested that plaintiff wake her husband to handle the situation.

## B. Facts Concerning Hostile Work Environment Claim

Plaintiff claims that the preceding facts also support her hostile work environment claim. To further support this claim, plaintiff presents the following additional facts:

1. In 1989, a safety supervisor and plaintiff arrived late to a training session. The supervisor said, "I'm sorry we're late, but when I picked Nora up at the motel, something came up." According to plaintiff, the comment implied sexual arousal.

2. In July 1989, a supervisor in Denver called plaintiff a "dumb bitch" when she failed to deliver various trailers to a brewery in Fort Collins, Colorado.

3. In 1992, Ray June, a dispatcher, asked if plaintiff was "tanned all over" and repeatedly asked to see if she, in fact, was free of tan lines.

4. Also in 1992, plaintiff asked a dispatcher why she was given unfairly heavy loads. The dispatcher responded that

"Maybe I'm not impressed with women's tits." Plaintiff, however, admits that the heavy loads were not given to her because she was a woman.

5. Sometime in either 1993 or 1994, plaintiff was not allowed to ask questions at a driver's meeting because of her gender.

6. During a safety inspection on June 21, 1994, Steve Rash, the then-Salt Lake City Safety Supervisor, asked plaintiff if she cheated on her husband and then described his experiences at Debbie Does Doughnuts, a topless doughnut shop in Fort Collins, Colorado. Plaintiff's time log indicates that she was detained for nearly two hours.

7. On October 31, 1994, Rash issued a speeding ticket to plaintiff's husband. In response, plaintiff allegedly called Rash a "son of a bitch." Rash issued a written warning to plaintiff for calling him that name.

8. Also in October 1994, Rash followed plaintiff around the Salt Lake City service center and was standing outside the restroom when she emerged.

9. Charlie Zagorda, a dispatcher at Salt Lake City, told plaintiff to "get the fuck out of [his] office" because plaintiff was wearing a union hat.

10. Ken Woods, a then-Kansas City terminal manager, reprimanded plaintiff for delaying freight and for "solicitation" when she was observed sitting and talking to other truck drivers for approximately three hours.

11. In February 1995, Thom Clark, a Salt Lake City road driver, allegedly told a sexually explicit story to plaintiff and other drivers about having watched his wife engage in intercourse with another man.

12. On March 21, 1995, plaintiff overheard an unknown man say to Dave Stodt, then-manager at the Denver Service Center, that the Teamsters must be paying plaintiff to be a "whore" because she wore union earrings.

13. When plaintiff asked defendant's Denver supervisor where to find the women's restroom, she was told plaintiff that it was a little brown building with a moon on it.

14. Defendant's terminal manager Kent Woods told plaintiff on numerous occasions that there were a thousand men waiting to take her job.

## C. Facts Concerning Retaliation Claim

Besides the facts stated above, plaintiff relies on the following incidents to support her claim that she was retaliated against for filing a charge of discrimination with the EEOC and writing a letter to defendant's Kansas City manager concerning union matters and the alleged hostile work environment in which she worked:

1. In October 1994, Steve Rash followed plaintiff around the Salt Lake City terminal and waited for her as she used the bathroom.

2. Also in October 1994, Rash issued plaintiff an unwarranted written warning for "solicitation."

3. On November 6, 1994, Rash twice called plaintiff into his office to discipline for her behavior and for allegedly calling him a "son of a bitch."

4. On June 22, 1995, plaintiff sustained a work-related injury in the female shower in Kansas City. Plaintiff was placed on light duty and assigned to work in an office setting for two or three weeks. In this setting, plaintiff's assignments were demeaning and exacerbated her knee injury.

5. On September 18, 1996, plaintiff was assaulted and beaten in the women's restroom in Salt Lake City. Plaintiff was grabbed from behind by a large man and was hit and kicked. The assailant said to plaintiff, "You've found Bubba." This statement referred to the phrase "Where's Bubba" that was chanted by union supporters at a Teamster's rally shortly before the assault.

6. Plaintiff recalls hearing Steve Rash's voice when she was being attacked and, therefore, believes Rash was her assailant.

7. Plaintiff was immediately taken to a hospital in Salt Lake City. She was soon discharged and released to return to work.

8. Upon returning to Kansas City, plaintiff sought further medical care. Dr. Aaron Travis found some bruising on plaintiff's face and torso and described her as anxious, upset, and nervous.

9. Plaintiff remained away from work from September 19, 1996 to May 1997. During that time, Dr. Thomas J. Fitzgerald diagnosed plaintiff as suffering from post-traumatic stress disorder. Dr. Fitzgerald determined that plaintiff's condition is attributable to the September 19, 1996 attack.

Plaintiff's outrage claim (Count IV) and assault and battery (Count V) claims are based on the factual allegations previously set out above.

Additional facts will be provided as necessary.

## II. Summary Judgment Standards

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325.

Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. See id. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden that the party will face at trial on the particular claim. See id. at 254.

## III. Discussion

### A. Allegations Properly Before the Court

■ A plaintiff must exhaust her administrative remedies before bringing suit under Title VII. Aramburu v. The Boeing Co., 112 F.3d 1398, 1409 (10th Cir.1997). Title VII requires that a plaintiff file an administrative charge with the EEOC before filing in court. The purpose of this administrative filing requirement is to give an employer notice of the charges and an opportunity to comply voluntarily with the statutes. See Aguirre v. McCaw RCC Comm., Inc., 923 F.Supp. 1431, 1433 (D.Kan.1996).

■ Under Title VII, the administrative charges must be filed with the EEOC within 300 days after the alleged discrimination. See Martin v. Nannie and the Newborns, Inc., 3 F.3d 1410, 1414 (10th Cir.1993) (citing 42 U.S.C. § 2000e–5(e)). Any alleged discrimination occurring outside of this time frame is time-barred and will not be considered by the court unless the acts complained of constitute part of a continuing pattern or practice of discrimination. See Martin, 3 F.3d at 1415.

■ In determining whether incidents of alleged discrimination constitute a continuing course of discrimination or whether they are discrete and unrelated acts, the Tenth Circuit considers the following nonexclusive considerations: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the viola-

tions should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Id.* In light of these factors, the court does not find a continuing pattern or practice of discrimination in this case. Although most of the alleged incidents appeared to occur because of plaintiff's gender, the alleged incidents occurring before *September 14, 1993*—300 days prior to plaintiff's EEOC filing—are sporadic and unrelated. Indeed, according to plaintiff, only a handful of incidents occurred between her hiring in 1988 and her EEOC filing in September 1993. Accordingly, incidents of alleged discrimination occurring prior to September 14, 1993, will not be considered by the court in deciding this motion, nor will they be admissible at trial.

## B. Count I: Disparate Treatment Claim

█ Plaintiff claims disparate treatment under Title VII. Title VII prohibits an employer from discriminating against an employee in the terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C. § 2000e–2(a)(1). The plaintiff must demonstrate that her sex was the motivation for her employer's denial of certain terms and conditions of her employment. *See EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1319 (10th Cir.1992) (essence of a disparate treatment claim is intentional discrimination based upon a protected classification); *Clark v. Atchison, Topeka & Santa Fe Ry. Co.,* 731 F.2d 698, 702 (10th Cir.1984) (the defendant is not required to treat all employees equally, but is prohibited from dispensing unequal treatment based on the sex of an employee). Plaintiff need not prove that she was denied terms and conditions of her employment solely because of her sex, but she must show that her sex was the factor that made a difference. *Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir.1995).

Plaintiff offers no direct evidence that defendant discriminated against her on an unlawful basis, but relies instead on circumstantial evidence to establish defendant's discriminatory intent. To insure an efficient presentation of circumstantial evidence, the Tenth Circuit has adopted the burden shifting scheme originally set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* framework, plaintiff first must establish a prima facie case of discrimination. If plaintiff succeeds, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decisions. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995). Assuming defendant meets that burden, all presumptions of discrimination drop from the case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The burden then shifts back to plaintiff to show that a genuine issue of material fact exists as to the veracity of defendant's proffered reasons for the challenged actions.

█ To establish her prima facie case, plaintiff must show: (1) that she is a member of a protected class of persons; (2) that she was entitled to the desired terms and conditions of employment; (3) that defendant denied plaintiff the desired terms and conditions of employment; and (4) that similarly situated male employees were granted the desired terms, conditions, and privileges of employment. *Moore v. Norfolk & W. Ry. Co.,* 731 F.Supp. 1015, 1019 (D.Kan.1990). To survive defendant's motion for summary judgment, plaintiff must establish each element of her prima facie case. Plaintiff alleges disparate treatment in regard to the toilet and shower facilities at defendant's terminals and as to the provision of mechanical assistance by defendant.

### 1. Toilet and Shower Facilities

█ The court finds that plaintiff has established her prima facie case for disparate treatment. The first, second, and fourth factors of the prima facie case are uncontested. Plaintiff has also sufficiently pleaded the third prong of her prima facie case—that she was denied equal access to defendant's shower and toilet facilities.

Once a plaintiff succeeds in establishing her prima facie case, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decisions. *Randle,* 69 F.3d at 451. In this case, defendant con-

tends that its shower and toilet facilities are sufficiently and equally accessible to all its workers. According to defendant, there can be no disparate treatment at those terminals that have no shower facilities at all or that have separate facilities for male and female drivers. Finally, defendant contends that the unisex shower facilities provide equal access to both male and female drivers.

Once defendant produces a legitimate reason for the alleged adverse employment action, plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. Plaintiff argues that access to defendant's toilet and shower facilities is not equal because she has been denied access to these facilities when similarly situated men have not. Plaintiff claims that defendant's articulated reason for any disparate treatment is actually pretext for discrimination based on sexual animus. According to her summary judgment papers, plaintiff was denied access to the bathroom facilities in the Denver, Reno, and Sacramento terminals because of her sex, denied access to the female toilet facilities in the Kansas City terminal when she forgot her key, denied access to the unisex shower in Portland, and forced to use female facilities in Salt Lake City that do not have sufficient lighting. These incidents create a genuine issue of material fact as to whether plaintiff faced disparate treatment because of her sex.

### 2. Mechanical Assistance

Plaintiff has also pleaded the four prongs of a prima facie case for disparate treatment in regard to defendant's provision of mechanical assistance to its drivers. Defendant has chosen not to contest plaintiff's claim. Therefore, although plaintiff provides the court with only two instances of alleged discrimination, this issue cannot be decided on summary judgment.

### C. Count II: Hostile Work Environment Claims

Hostile work environment sexual harassment is behavior that would not occur "but for" the sex of the employee. If the nature of an employee's environment is not due to her gender, she has not been the victim of sex discrimination. *Gross v. Burggraf Constr. Co.,* 53 F.3d 1531, 1537 (10th Cir.1995). Furthermore, "[c]onduct that is not severe or pervasive enough to create an objectively hostile environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The court must determine if a genuine issue of material fact exists as to whether the conduct alleged by plaintiff was (1) was based on her gender or on sexual animus; and (2) pervasive or severe enough to objectively alter the terms, conditions, or privileges of plaintiff's employment. *See Gross,* 53 F.3d at 1539.

Plaintiff claims that she has been exposed to explicit sexual comments, intimidation, humiliation, and embarrassment because of her gender. To support this claim, plaintiff cites to forty-one numbered paragraphs in her statement of uncontroverted material facts. The court will consider only those incidents that are not time-barred and that support her claim of a gender-based hostile work environment. The court concludes that there is a genuine issue of material fact as to this issue. Summary judgment is denied as to plaintiff's hostile work environment claim.

### D. Retaliation

Plaintiff also claims that she suffered illegal retaliation as a result of her complaints about the unequal shower and toilet facilities at defendant's terminals. Specifically, plaintiff claims that she was subjected to unwarranted discipline, a loss of benefits, and physical attack.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

To establish a prima facie case of retaliation under Title VII, plaintiff must show: (1) that she engaged in protected opposition to discrimination; (2) that she suffered adverse action from her employer; and

(3) that there was a causal connection between her protected activity and her employer's adverse action. *Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993). It is undisputed that plaintiff engaged in "protected opposition to discrimination." The court also finds that plaintiff satisfies the second prong of her prima facie case. It is undisputed that plaintiff was disciplined by defendant, that plaintiff was assaulted in the bathroom at defendant's Salt Lake City terminal, and that defendant refused to pay plaintiff's medical bills allegedly resulting from an injury in a company shower. Finally, the third prong is satisfied by plaintiff's testimony that defendant's adverse actions were a direct result of her protected activity.

Defendant asserts that there is a nondiscriminatory explanation for the allegedly discriminatory acts and insists that there is no evidence that defendant ordered the attack on plaintiff. Defendant first argues that the assault appears to have been in response to plaintiff's union activities rather than in response to her protected activity of contesting the unequal bathroom and shower facilities. Defendant also claims that it had every right to contest and refuse to pay plaintiff's medical bills and that this refusal was unrelated to plaintiff's EEOC filing or protest letter. Finally, defendant contends that plaintiff was placed in office duty due to her injuries, not in retaliation for plaintiff's protected activities.

In response, plaintiff claims that the many examples of defendant's discriminatory conduct show that defendant's stated reasons for its adverse employment action are mere pretext for discrimination. As a preliminary matter, some of defendant's conduct is not relevant to this claim. The first time plaintiff engaged in a protected activity—the filing of her discrimination charge with the EEOC—was on November 18, 1994. Only those incidents occurring after that date will be considered by the court. Plaintiff's retaliation claim, therefore, is pared down to the Salt Lake City assault, the demeaning post-injury office assignment, and defendant's refusal to pay for her medical bills. When viewing these incidents in a light most favorable to plaintiff, the court finds these incidents create a genuine issue of fact as to defendant's true motivation for the various adverse employment decisions alleged by plaintiff. Accordingly, defendant's motion for summary judgment is denied as to plaintiff's retaliation claim.

## E. Intentional Infliction of Emotional Distress (Outrage)

In Count IV, plaintiff alleges a claim of intentional infliction of emotional distress, also known as the tort of outrage. Four elements must be demonstrated to establish a claim of outrage: (1) the conduct of the defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe. *Laughinghouse v. Risser,* 754 F.Supp. 836, 842 (D.Kan.1990). Plaintiff has established all four prongs of her prima facie case.

Once the prima facie case is established, it is for the court to determine if two threshold requirements have been met before an outrage claim may be allowed to proceed. The court must be convinced (1) that reasonable fact finders might differ as to whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) that the emotional distress suffered by the plaintiff is of such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Id.*

Although Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims, the court finds that defendant's motion for summary judgment must be denied. Plaintiff has alleged that defendant caused her to be assaulted in retaliation for her criticisms concerning defendant's bathroom and shower facilities. A reasonable jury could certainly find this to be outrageous conduct. Also, for purposes of this motion, the court concludes that plaintiff suffered extreme emotional distress. According to Dr. Fitzgerald, plaintiff suffers from post-traumatic stress disorder as a direct result of the Salt Lake City assault. Although defendant has denied responsibility for the assault, summary judg-

ment is inappropriate as there remains a genuine issue of material fact as to defendant's culpability.

 Defendant contends that regardless of its culpability in the assault of plaintiff, summary judgment should be granted because plaintiff's claim is barred by the Kansas Workers' Compensation Act, K.S.A. 44–501 *et seq.* In Kansas, workers' compensation is the exclusive remedy for injuries arising out of, and in the course of, an employee's work environment. K.S.A. 44–501(b). This includes injuries caused by the intentional torts of third parties, including fellow employees. However, "[a]n intentional assault by the employer on the employee, when the employer acts in person as distinguished from constructively through an agent, will ground a common-law action for damages." 6 Arthur Larson, Workers' Compensation Law § 68.11 (1997). A rule to the contrary would effectively permit employers to say, "I can assault you with impunity and the only remedy you have is to take Workman's Compensation which I have provided for you." *Id.* (quoting *Garcia v. Gusmack Restaurant Corp.*, 150 N.Y.S.2d 232 (1954) (tort action allowed against employer for an assault by the president of the company)). Although no Kansas court has expressly adopted this exception to the exclusive remedy provision of the Kansas Workers' Compensation Act, the court believes that the Kansas Supreme Court would do so if confronted with the facts of this case.[2] Accordingly, defendant's motion for summary judgment is denied as to plaintiff's outrage claim.

**F. Assault and Battery**

 Plaintiff also asserts claims for assault and battery. To prove assault, plaintiff must show an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary, but words do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of imminent harmful or offensive contact with his person. *Taiwo v. Vu*, 249 Kan. 585, 822 P.2d 1024, 1031 (1991). Plaintiff need not show fear of being beaten or severely injured. *Id.* "To prove battery, plaintiff must show an unprivileged touching or striking, done with the intent of bringing about either a contact or an apprehension of a contact that is harmful or offensive." *Daniels v. Dillard Dept. Stores, Inc.*, 881 F.Supp. 505, 510–11 (D.Kan. 1995). Defendant does not contest that plaintiff has established a prima facie case for both assault and battery. However, as stated above, defendant argues that summary judgment should be granted as it was not responsible for either tort. This mere denial does not warrant a grant of summary judgment. When this denial is juxtaposed with plaintiff's allegations and deposition testimony, there remains a genuine issue of material fact precluding a grant of summary judgment.

 Defendant also contends that regardless of whether it committed an assault or battery on plaintiff, summary judgment should be granted because plaintiff's claims are barred by the exclusive remedy provision of the Kansas Workman's Compensation Act. For the same reasons as stated above, this argument fails as plaintiff has sufficiently alleged that her assault and battery were the result of defendant's intentional tort. Accordingly, summary judgment is denied as to this claim.[3]

IT IS, THEREFORE, BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 54) is denied.

**IT IS SO ORDERED.**

---

**2.** California, District of Columbia, Illinois, Louisiana, Michigan, Minnesota, New York, Pennsylvania, South Carolina, Texas, Virginia, and Wyoming all consider an intentional injurious act by an employer actionable under the common law despite the exclusive remedy provisions in their respective state's workers' compensation law. *Id.* n. 1.

**3.** The court notes that if plaintiff fails to establish at trial that defendant directed and intended its agent to assault plaintiff, recovery on her common law claims will be barred by the exclusive remedy provision of the Kansas Workers' Compensation Act. *See Beam v. Concord Hospitality, Inc.*, 873 F.Supp. 491, 497–99 (D.Kan.1994).