Rita Lynn BAKER, Plaintiff,

v.

JOHN MORRELL & CO., Defendant.

No. C01–4003MWB.

United States District Court,
N.D. Iowa,
Western Division.

Aug. 13, 2002.

Stanley E. Munger, Jay Elliot Denne, Munger, Reinschmidt & Denne, Sioux City, IA, for Plaintiff.

Melanie L. Carpenter, Gary P. Thimsen, Woods, Fuller, Shultz & Smith, PC, Sioux Falls, SD, Edward J. Gutman, Blum, Yumkas, Mailman, Gutman & Denick, PA, Bal-

timore, MD, Scott C. Folkers, Scott Folkers Law Firm, Sioux Falls, SD, Leslie R. Stellman, Hodes, Ulman, Pressin & Katz, PA, Towson, MD, for Defendant.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................1002
 A. *Procedural Background* ........................................1002
 B. *Factual Background* ...........................................1003

II. *STANDARDS FOR SUMMARY JUDGMENT* ...............................1004
 A. *Requirements Of Rule 56* ......................................1005
 B. *The Parties' Burdens* .........................................1005
 C. *Summary Judgment In Employment Discrimination Cases* ..............1006

III. *LEGAL ANALYSIS* ...............................................1007
 A. *Disparate Treatment Claim* ....................................1007
 1. *Baker's prima facie case* .................................1009
 a. *Claims raised in Baker's administrative complaints* .............1010
 b. *Consideration of claims not raised in administrative complaint* ...................................................1011
 c. *The timeliness of Baker's claims of discrimination* ..............1011
 i. *Discrete discriminatory and retaliatory acts* .................1012
 d. *Remaining elements of Baker's prima facie case* ...............1013
 2. *John Morrell's legitimate, non-discriminatory reasons* ...............1015
 3. *Proof of "pretext" and "intentional discrimination"* ..................1015
 B. *Hostile work environment claim* ................................1016
 C. *Retaliation Claim* ............................................1017
 1. *Baker's evidence of adverse action* ..............................1019
 2. *Baker's evidence of causal connection* ...........................1020
 D. *Constructive Discharge* .......................................1021
 1. *Proof of constructive discharge* .................................1021
 2. *Baker's evidence of constructive discharge* .........................1023

IV. *CONCLUSION* ...................................................1024

### I. INTRODUCTION

#### A. Procedural Background

On January 24, 2001, Rita Lynn Baker ("Baker") filed a complaint against her former employer, defendant John Morrell, Co., alleging three causes of action: (1) a claim of a sexually hostile work environment; (2) a claim of sexual discrimination; and (3) a claim of retaliation. Baker contends that all three led to her alleged constructive discharge in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Baker initially sought to bring this action on behalf of a class of women similarly situated, but on December 6, 2001, Baker moved to dismiss the class action suit without prejudice. The court determined that the relevant factors weighed in favor of dismissal of the class action and therefore granted Baker's motion on May 6, 2002. Thus, only Baker's individual claims remain at issue in this litigation. Presently, John Morrell seeks summary judgment in its favor on Baker's individual claims.

A trial in this matter is presently scheduled for September 23, 2002. Ms. Baker is represented by Stanley E. Munger, Jay E. Denne and Colby Lessmann, all of Mun-

ger, Reinschmidt & Denne, Sioux City, Iowa. John Morrell is represented by Gary P. Thimsen and Melanie L. Carpenter, from Woods, Fuller, Shultz, & Smith, P.C., Sioux Falls, South Dakota, Leslie R. Stellman of Hodes, Ulman, Pessin & Katz, P.A., Towson, Maryland, and Scott C. Folkers, Sioux Falls, South Dakota.

## B. Factual Background

Baker was hired for the job of Computer Scale Operator for John Morrell beginning on October 2, 1984, and she worked at John Morrell in this same position up until April 2001, when she was allegedly constructively discharged. She went on medical leave beginning in April 2001, until February 2002, when she informed John Morrell she would not return from her medical leave because she could not endure the environment at John Morrell any longer and had secured employment elsewhere. Pl.'s Statement of Additional Facts, at 17.

During her time at John Morrell, Baker worked on a production line with her co-workers who were predominantly male. At times, Baker was the sole female line worker for a designated part of the production line. Pl.'s App., at 40. Baker alleges she began experiencing sexual harassment for the first time at John Morrell in 1995, as a result of conduct directed at her by Jeff Eichmann, a male co-worker who was working as a strapper, "downstream" from Baker on the line. Subsequently, other male co-workers proceeded to sexually harass Baker, including Brian Murphy. Baker alleges the existence of several incidents of sexual harassment by both men, the worst of which the court will outline briefly below.

First, Eichmann constantly mimicked and made fun of Baker by making crying sounds regarding Baker's requests to use the bathroom as a consequence of a condition she developed where tumors in her uterus caused heavy menstruation all of the time and not just during her normal monthly period. Baker underwent surgery to attempt to remedy this condition and her bladder was punctured during the surgery, making it necessary that Baker receive more frequent bathroom breaks. As Eichmann and Murphy verbally harassed Baker, they would sometimes wiggle their hips and make a thrusting motion with them at Baker. Eichmann would call Baker a "fucking bitch" and a "dumb blonde" and set about telling other male co-workers that he had been to Baker's home, "played with" Baker's "pussy" and it was "black." Pl.'s Statement of Additional Facts, at 6. Murphy would ask Baker to have a drink with him, he left a note on her car once, and gave her a Pez candy dispenser with a "Wonder Woman" head on it. When Baker asked what the Pez dispenser was, Murphy replied that "it was 'Wonder Woman' because he was always 'wondering' what Baker looked like naked." Pl.'s Statement of Additional Facts, at 9. Murphy spread rumors around the plant that Baker was "good in the sack" and that he had been to Baker's house and she had answered the door in a robe with her "tits hanging out." Pl.'s Statement of Additional Facts, at 10. On another occasion, Eichmann walked past Baker and proceeded to grab her arms from behind, and in a mocking fashion, said "Excuse me" as he pressed his groin into Baker's rear end. Pl.'s Statement of Additional Facts, at 14.

When Baker allegedly became the target of her male co-workers' sexual harassment, she reported the acts to her immediate supervisors, foremen Ron Ridge, Kathi Brown, Russ Mitchell and Denny Reitz. She also communicated the conduct to her Union Representatives, Warren Baker and Ron Haase, who told Baker they would notify John Morrell. Warren Baker and Ron Haase testified in their depositions that each time Baker complained, they ad-

dressed her complaints with foremen and personnel, namely Steve Joyce, director of human resources. Baker met with Steve Joyce on a number of occasions. As a result of her complaints, instead of improving, Baker alleges her working conditions deteriorated because Eichmann and Murphy retaliated against her. Both Eichmann and Murphy would shut the line down causing Baker to back up; they would throw boxes at her, backwards and sideways, intentionally making her job more difficult after she complained or declined Murphy's invitations; Eichmann threatened Baker after she complained once saying, "From now on, I'm your fucking shadow"; Eichmann shoved Baker into a table and told her "Your fucking mother's dead"; and Eichmann floored his truck at Baker in John Morrell's parking lot coming to a sliding hault just a few feet in front of her.

In addition to her allegations of sexual harassment, Baker contends she was the victim of disparate treatment based on sex. Baker claims that she was denied equal access to bathroom facilities at John Morrell by her supervisors. Specifically, Baker asserts that she was regularly denied permission to use the bathroom, and instead was forced to wait up to thirty minutes and even an hour while her male co-workers, whose requests came after those of Baker, were allowed to use the bathroom before her. Likewise, Baker's breaks, or spellouts, were limited to five or ten minutes, whereas her male co-workers received breaks extending up to thirty and forty-five minutes. Baker contends that even after she procured a doctor's excuse explaining the medical necessity for her bathroom breaks, she was forced to wait, causing her on one occasion to bleed through her clothes and have to leave work. Further, Baker claims that her foreman, Kathi Brown, required her to perform additional job duties outside the scope of Baker's position as a Computer Scale Operator, effectively doubling her workload. In response, Baker would repeatedly request assistance and be denied it, even though her male counterpart, Alex, who performed her same job when she was not working, received requested assistance. Baker reported these alleged, discrete discriminatory acts in the same manner as she had those incidences of sexual harassment, and as a consequence, Baker contends she was retaliated against.

In January of 2000, Baker filed a charge of discrimination against John Morrell with the Iowa Civil Rights Commission (ICRC), which was cross-filed with the Equal Employment Opportunity Commission (EEOC). In her charge, Baker indicated that she felt she had been discriminated against based on her sex and in retaliation for her complaints regarding the discrimination. In addition to the specific instances of discrimination alleged in her charge, Baker stated she "felt nobody cared ... I feel that I've been discriminated against because they abandoned me when I went to them for help. They have put me on the spot and have tried to make me the 'bad guy' so that other workers in the plant will retaliate and ostracize me." Def.'s App., at 177–78. Baker received right-to-sue letters from the ICRC and EEOC on November 15, 2000, and November 27, 2000, respectively.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo*, 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.*, 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill*, 969 F.Supp. 1167, 1172–74 (N.D.Iowa

1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Cmty. Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essentials of these standards for present purposes are as follows.

### A. Requirements Of Rule 56

Rule 56 itself provides, in pertinent part:

Rule 56. Summary Judgment

. . . . .

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed. R. Civ. P.. 56(a)-(c) (emphasis added).

Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v.*

*Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538(1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir. 1999); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### B. The Parties' Burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Instead, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex*

*Corp.*, 50 F.3d 507, 511 (8th Cir.1995). If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### C. Summary Judgment In Employment Discrimination Cases

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir.1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir. 1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995) ("[S]ummary judgments should only be used sparingly in employment discrimination cases.") (citing *Haglof v. Northwest Reha-*

*bilitation, Inc.*, 910 F.2d 492, 495 (8th Cir. 1990); and *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant.") (citing *Crawford*, 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

Nevertheless, the Eighth Circuit Court of Appeals also observed that "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting frame-

work of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied,* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097 (quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[1] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge." *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097. The court will apply these standards to the defendants' motion for summary judgment, addressing each of Baker's claims in turn.

### III. LEGAL ANALYSIS

#### A. Disparate Treatment Claim

Baker contends that John Morrell discriminated against her because of her sex

in violation of 42 U.S.C. § 2000e *et seq.* The United States Supreme Court recognizes two theories to prove employment discrimination under Title VII of the Civil Rights Act of 1991. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). One is the disparate treatment theory, and the other is the disparate impact theory. *Id.* Here, Baker alleges disparate treatment by John Morrell. The United States Supreme Court defined disparate treatment in *International Bhd. of Teamsters:*

> Disparate treatment . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. . . .

*Id.* at 335 n. 15, 97 S.Ct. 1843.

There are two methods by which a plaintiff can attempt to prove intentional employment discrimination. First, the plaintiff can rely upon the standard set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), if the plaintiff produces direct evidence that an illegitimate criterion, such as gender, "played a motivating part in [the] employment decision." *Id.* at 258, 109 S.Ct. 1775. Once the plaintiff establishes such direct evidence, the burden shifts to the employer to demonstrate by a preponderance of the evidence that the employer would have reached the same employment decision absent any discrimination. *Id.* (as modified by section 107 of the Civil Rights

---

1. In *Reeves,* the Supreme Court was considering a motion for judgment as a matter of law after a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the

inquiry under each is the same.' " *Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Liberty Lobby, Inc.,* 477 U.S. at 250–51, 106 S.Ct. 2505). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

Act of 1991, 42 U.S.C. § 2000e–5(g)(2)(B)(i)–(ii)).[2] If the employer fails to meet this standard, the employee prevails. Alternatively, the plaintiff can proceed under the three-stage, burden-shifting standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Texas Dep't of Com. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. Once a *prima facie* case is established, a rebuttable presumption shifts the burden to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. If the employer articulates such a reason, the presumption disappears and the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discrimination. Here, plaintiff Baker does not assert that she has direct evidence that sex was a motivating factor in John Morrell's differential treatment of her. Therefore, the court turns to the three-stage, burden-shifting standard set forth in *McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. 1817.

Under the *McDonnell Douglas* analysis, the plaintiff's usual burden to establish a *prima facie* case of employment discrimination is to show that: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job he or she was performing; (3) the plaintiff suffered adverse employment action, or was discharged; and (4) a nonmember of the protected class replaced the plaintiff or was not subjected to the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir.1999).

The United States Supreme Court clarified the burden-shifting analysis required for discrimination claims in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In Reeves, the court explained the burden-shifting analysis as follows:

> McDonnell Douglas and subsequent decisions have "established an allocation of the burden of production and an order for the presentation of proof in ... discriminatory-treatment cases." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). First, the plaintiff must establish a prima facie case of discrimination. *Ibid.; Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).... [Once the prima facie case is established,] [t]he burden ... shift[s] to [the defendant] to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine, supra*, at 254, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. This burden is one of production, not persuasion; it "can involve no credibility assessment." *St. Mary's Honor Center*, supra, at 509, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407. [A defendant meets] this burden by offering admissible evidence

**2.** The pertinent statutory language follows:
> On a claim in which an individual proves a violation under section 2000e–2(m) of this title and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court—
>> (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) of this title; and
>> (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment, described in subparagraph (A).
>
> 42 U.S.C. § 2000e–5(g)(2)(B)(i)–(ii).

sufficient for the trier of fact to conclude that petitioner was fired [for a legitimate reason]. Accordingly, "the McDonnell Douglas framework—with its presumptions and burdens"—disappear[s], *St. Mary's Honor Center,* supra, at 510, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, and the sole remaining issue [i]s "discrimination vel non," *[U.S. Postal Service Bd. of Governors v.] Aikens,* 460 U.S. [711,] 714, 103 S.Ct. 1478, 75 L.Ed.2d 403. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, 67 L.Ed.2d 207. And in attempting to satisfy this burden, the plaintiff—once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision—must be afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Ibid.; see also St. Mary's Honor Center,* supra, at 507–508, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination "by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* supra, at 256, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. Moreover, although the presumption of discrimination "drops out of the picture" once the defendant meets its burden of production, *St. Mary's Honor Center, supra,* at 511, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case "and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual," *Burdine,* supra, at 255, n. 10, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

*Reeves,* 530 U.S. at 141, 120 S.Ct. 2097.

### 1. Baker's prima facie case

■ The court will assume, as do the parties, that Baker can satisfy the first and second elements of her *prima facie* case of discrimination: she is female; and she was capable of performing her job. John Morrell attacks the third and fourth elements of Baker's *prima facie* case. John Morrell contends that Baker raises untimely claims of discrimination, and those that are timely cannot support an actionable claim of discrimination because such claims are not specifically stated in or reasonably related to the substance of her allegations in her ICRC and EEOC charges of discrimination. Specifically, John Morrell argues that Baker's claims of discrimination concerning her allegations that foreman, Kathi Brown, denied her bathroom breaks and did not give her help on the job were not raised in Baker's charges of discrimination and are not related to her reported claims of disparate treatment discrimination as alleged in her EEOC and ICRC charges.

Before proceeding with a claim of disparate treatment based on sex, a plaintiff must first exhaust her administrative remedies by timely filing a charge of discrimination with the EEOC and then may only proceed upon receipt of a right-to-sue letter. 42 U.S.C. § 2000e–5(e)(1); *see Dorsey v. Pinnacle Automation Co.,* 278 F.3d 830, 838 (8th Cir.2002); *Stuart v. General Motors Corp.,* 217 F.3d 621, 630 (8th Cir. 2000) (citing *American Nat'l Ins. Co.,* 154 F.3d 875, 886 (8th Cir.1998)). In order to initiate a claim under the ICRC, a party must first timely file an administrative complaint with the ICRC and obtain a right-to-sue letter. IOWA CODE CH. 216 (2000); *see Nava v. Titan Wheel Corp.,* 216

F.Supp.2d 882, 887–88 (N.D.Iowa 2002). In the present case, Baker filed a charge of discrimination in January 2000, with the ICRC against John Morrell, which was cross-filed with the EEOC. In addressing the scope of a charge of discrimination, the Eighth Circuit Court of Appeals has stated:

> To determine whether an allegedly discriminatory action falls within the scope of a claim, "the administrative complaint must be construed liberally" in order to further the remedial purposes of applicable legislation, *i.e.,* to prohibit unlawful employment practices, and a plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols,* 154 F.3d at 886–87. The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination. *See Tart,* 31 F.3d at 671.

*Stuart,* 217 F.3d at 630–31.

### a. Claims raised in Baker's administrative complaints

In her EEOC and ICRC charges, Baker stated, "Also since I came back to work, they redesigned my line and have made my job harder.... When I am not at work, they have two people doing the job that I do." Def.'s App., at 178. In addition, with regard to her allegations of disparate treatment based on sex and retaliation, Baker stated "I have been to Warren Baker, Ron Hause, Kathy Brown (foreman), Russ Mitchell (foreman), Steve Joyce (personnel)." Def.'s App., at 177. Baker alleges, in her resistance to defen-

dant's motion for summary judgment, that after she filed her complaint with the ICRC in January 2000, her foreman and supervisor, Kathi Brown (Brown), started giving Baker additional job duties not included within her job description as a Computer Scale Operator—duties that were to be performed by quality control employees or foremen. Pl.'s App., at 39. The parties do not dispute that as a Computer Scale Operator, Baker's job responsibilities consisted of seeing the product coming down the line, punching in the correct code, labeling and weighing the meat, and sending the product on down the line to the next state. Pl.'s Statement of Additional Facts, at 1. The additional job duties Baker refers to involve instructing the people boxing the meat about how many and what kinds of pieces of meat to put in each box. As a result, Baker explained, "I was trying to do my job and hers [Brown's], and I would get confused and I would make mistakes, and then she would yell at me." Pl.'s App., at 38A. As a consequence of Baker's being required to do the work of more than one person, Baker was written up by Brown for not having the correct number of meat products in a box. Pl.'s App., at 39. Baker felt "She [Brown] was making my job too hard for me." Pl.'s App., at 55. Baker alleges Brown denied her repeated requests for help, but allowed Alex,[3] a male co-worker, to get help when he did Baker's same job, which was supposed to consist of making labels, placing them on boxes, and weighing the meat. Pl.'s Statement of Additional Facts, at 1–2. Baker contends that other co-workers, including Lam, a strapper, and Kay Nilson, a line worker, corroborated the fact that Brown allowed Alex to

---

**3.** Based upon the record, the court cannot determine, with certainty, the identity of Alex. John Morrell identifies a male co-worker by the name of Alex Hernandez in its motion for summary judgment. However, this reference is in the context of those co-workers who allegedly received more bathroom breaks than Baker. Baker refers to Alex as the male co-worker who performed her job as a Computer Scale Operator opposite her.

get assistance. Pl.'s App., at 53. The court concludes that these allegations were directly presented to the EEOC and ICRC.

On the other hand, Baker now alleges that Brown would yell at her when she would request to use the bathroom and would make Baker wait until her male co-workers had used the bathroom. Even when Brown allowed Baker breaks, Baker was only permitted five minutes and her male co-workers, including Alex, Quin Padilla, Sam Munoz, and Jeff Eichman, were allowed thirty and forty-five-minute breaks. Pl.'s App., at 56; Def.'s App., at 38. The court finds that Baker's claim of being denied access to the bathroom and breaks was not directly presented in her charge of discrimination. The question then becomes whether this court may nonetheless entertain this claim.

### b. Consideration of claims not raised in administrative complaint

The scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the charge of discrimination but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Cobb v. Stringer*, 850 F.2d 356, 358 (8th Cir.1988). "[T]he appropriate standard for measuring exhaustion is not those charges that the EEOC in fact considered, but those that were brought to its attention." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1112 (7th Cir.1992). To determine whether allegations not specified in the complaint of discrimination are like or reasonably related to those that are, a court inquires whether the incidents are within the scope of what the agency would reasonably be expected to investigate. As the Eighth Circuit Court of Appeals has observed: "[T]he sweep of the administrative charge is as 'broad as the scope of the EEOC investigation which could reasonably be ex-

pected to grow out of the charge of discrimination.'" *Simmons v. New Pub. Sch. Dist. No. Eight*, 251 F.3d 1210, 1216 (8th Cir.2001) (quoting *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 836 (8th Cir.2000)) (quotations omitted); *see also Meyer v. Iowa Mold Tooling, Co., Inc.*, 141 F.Supp.2d 973, 983–84 (N.D.Iowa 2001) (applying the same standard to a plaintiff's claim under the ADA). Thus, the issue is whether Baker's claim of disparate treatment based upon denial of equal access to bathroom facilities can be considered "like or reasonably related" or "growing out of" Baker's allegations of disparate treatment based on sex as described in her charge of discrimination.

Although with some reservation, the court concludes that when liberally construed, in order to further the remedial purposes of Title VII and its prohibition against unlawful employment practices, *Stuart*, 217 F.3d at 630–31, Baker's claim of denial of equal access to bathroom facilities by Brown is sufficiently like or related to her claim of disparate treatment based on sex to be considered within the scope of this lawsuit. Specifically, the court finds that the denial of something so fundamental as equal access to bathroom facilities in the workplace can impede job performance. Such information could reasonably grow out of an investigation into Baker's claims that "they [John Morrell] made my job harder." Def.'s App., at 177. If the court determined, as it has, that Baker's claims are properly within or grow out of her EEOC and ICRC charges of discrimination, John Morrell asserts that such claims are barred because they were not timely raised.

### c. The timeliness of Baker's claims of discrimination

"A sex discrimination complainant may recover for any discriminatory act for

which the statute of limitations has not expired." *Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568, 572 (8th Cir.1997); *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 229–30 (8th Cir.1996) (citing *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 167–68 (8th Cir.1995) (en banc)). The Supreme Court recently opined that "Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *National R.R. Passenger Corp. v. Morgan*, —— U.S. ——, ——, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) (citing *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974)). A party initiating a claim under Title VII must first exhaust her administrative remedies by filing a charge with the EEOC within 300 days of the discriminatory act or occurrence. 42 U.S.C. § 2000e–5(e); *Kimzey*, 107 F.3d at 572. Because Baker filed her charge of discrimination in January 2000, she can recover for acts reaching back to April 1999, under Title VII. Ordinarily, evidence of discrimination is admissible only if it relates to acts that took place within the statutory limitations period predating the filing of the charge of discrimination and is otherwise time barred if it is not filed within these time limits. *Morgan*, —— U.S. at ——, 122 S.Ct. at 2070; *Kline v. City of Kansas City, Mo., Fire Dep't.*, 175 F.3d 660, 664 (8th Cir.1999).

The Supreme Court had occasion to consider Title VII's timely filing requirements most recently in *National R.R. Passenger, Corp., v. Morgan*, —— U.S. at ——, 122 S.Ct. at 2061. In *Morgan*, the respondent, a black male, filed suit against his employer, petitioner Amtrak, alleging he had been a victim of a racially hostile environment and subjected to discrete discriminatory and retaliatory acts. *Id.* at 2068. Morgan filed a charge of discrimination with the EEOC complaining of allegedly discriminatory acts which took place both

within 300 days of his filing the charge and predating the limitations period. *Id.* The Ninth Circuit Court of Appeals reversed the district court's determination that Morgan's claims predating the limitations period were barred, relying on its continuing violation doctrine which "allows courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'" *Morgan*, —— U.S. at ——, 122 S.Ct. at 2069 (citing *Morgan v. National R.R. Passenger Corp.*, 232 F.3d 1008, 1014 (9th Cir.2000)) (internal quotations omitted).

In arriving at its decision, the Court in *Morgan* narrowed its inquiry to two questions: "What constitutes an 'unlawful employment practice' and when has that practice 'occurred'?" *Id.* at 2070. The Court analyzed these questions separately in both the context of discrete retaliatory or discriminatory acts and hostile environment. The court will do the same.

***i. Discrete discriminatory and retaliatory acts.*** In *Morgan*, the Court declared, "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 2070–71. In answer to the second question, the Court found that 42 U.S.C. § 2000e–2 does not provide a statutory basis for the Ninth Circuit Court of Appeals' continuing violation doctrine nor respondent's interpretation of the phrase "unlawful employment practice" as connoting "an ongoing violation that can endure or recur over a period of time." *Id.* at 2071 (citing Brief for Respondent, at 25–26). Those acts which qualify as unlawful employment practices include discrete acts such as an employer's discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment...." *Id.* (citing 42 U.S.C. § 2000e–2(a)). "There is simply no indication that the term 'practice' con-

verts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.* (citing 42 U.S.C. § 2000e–6(a)). Thus, the Court declared that a discriminatory act outside of the limitations period that relates to acts alleged in timely filed charges, is not actionable because it is time barred. *Id.* at 2072. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*

■ In the present case, Baker seeks to admit evidence of events predating the limitation period, not as a basis for an award of damages, but as relevant evidence to aid the trier of fact in determining whether or not the acts within the 300–day period were discriminatory. Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 25. The acts Baker is referring to include conduct on the part of her supervisor and foreman, Ron Ridge, dating back to 1996 and 1997. Baker contends Ridge frequently made her wait up to an hour to use the bathroom while permitting male co-workers to use the facilities before her, even after Baker presented him with two doctor's notes relating her need to use the restroom due to menstruation problems and then as a result of surgery that consequently punctured her bladder. On one of these occasions, Ridge's refusal supposedly caused Baker to bleed through her clothes, forcing her to leave work. In addition, Baker seeks to admit evidence that John Morrell made her work harder, which claims supposedly date back to 1998 and 1999. Baker alleges that John Morrell added to her job duties and discriminated against her by making her do the same amount of work that is divided between two people on the night shift. In particular, Corky Lemmon, a male co-worker, was allowed assistance doing Baker's same job on the night shift, or is allegedly permitted to shut the line off to make labels. As duly noted above, such acts are not actionable because they are time barred and thus cannot serve as a basis for liability.

The Court held previously in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), that "discrete acts that fall within the statutory period do not make timely acts that fall outside the time period," *Morgan,* —— U.S. at ——, 122 S.Ct. at 2071 (citing *Evans,* 431 U.S. at 558, 97 S.Ct. 1885), however, the Court went on to state that acts outside the limitations period "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue ... But the emphasis should not be placed on mere continuity; the critical question is whether any present violation exists." *Evans,* 431 U.S. at 558, 97 S.Ct. 1885. In *Morgan,* the Court reaffirmed its prior position in *Evans* and concluded that Title VII does not bar "an employee from using the prior acts as background evidence in support of a timely claim." *Morgan,* —— U.S. at ——, 122 S.Ct. at 2072; *see Kline,* 175 F.3d at 667 (upholding jury instructions on claim of disparate treatment where such claims were pleaded as continuing violations but relied on discrete acts of discrimination within the limitations period rendering evidence from outside the applicable period admissible as relevant background, but not as a basis for liability). The court finds that Baker's allegations of discriminatory conduct predating the limitations period may be used as background evidence in support of her timely claims against John Morrell.

### d. Remaining elements of Baker's prima facie case

■ John Morrell argues that even if the court should find that Baker exhausted her administrative remedies with regard to those claims of disparate treatment timely filed, such claims of disparate treatment

do not constitute adverse employment actions. The Eighth Circuit Court of Appeals has emphasized that "[c]hanges in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case." *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The court, having found that Baker's disparate treatment claims pertaining to Brown's repeated denial of equal access to bathroom facilities and Brown's adding job duties to Baker's job are within the scope of this lawsuit, will now address the third element for requisite adversity of employment actions.

Concerning Baker's first claim of denial of equal access to bathroom facilities, such a denial has been found to alter the terms and conditions of a plaintiff's employment. In *Stapp v. Overnite Transp. Co.*, 995 F.Supp. 1207, 1213 (D.Kan.1998), the plaintiff, a female, and her husband worked as 'road drivers' for defendant interstate carrier. *Id.* at 1209. Plaintiff claimed, and the court found, that she suffered an adverse employment action because of "her inability to gain equal access to toilet and shower facilities at defendant's various terminals and service centers." *Id.; see also Blackmon v. Pinkerton Sec. & Investigative Serv.*, 182 F.3d 629, 631 (8th Cir.1999) (finding employer's denial of plaintiff's requested break in a certain location to escape sexually explicit conversations of her co-workers to be an adverse employment action). John Morrell's legitimate, nondiscriminatory reasons for allegedly denying Baker equal access to bathroom facilities are not reasons at all, but categorical denials by both Ron Ridge and Brown, and are more appropriately arguments in support of John Morrell's position that Baker did not suffer an adverse employment action. Even when considering such arguments in their proper context the court finds the testimony creates credibility determina-

tions for the trier of fact and not the court. Thus, Baker has generated genuine issues of material fact from the record evidence under this standard.

Baker's second claim of adverse employment action is based on John Morrell's allegedly making her job harder. John Morrell maintains that any changes in Baker's job duties did not cause any materially significant disadvantage to Baker but merely may have caused some increased stress and work. However, as described earlier, the additional job duties imposed upon Baker by Brown caused Baker to make mistakes, and consequently, Brown wrote Baker up for failing to make sure the correct number and kinds of pieces of meat were in each box. Baker also argues that the additional job duties required her to assume the job responsibilities of quality control employees or foremen, essentially requiring Baker to learn new skills. There is evidence that these additional duties did in fact cause Baker stress, and coupled with the fact that Brown ignored her repeated requests for assistance, at a minimum generates a genuine issue of material fact as to whether her working conditions were materially and significantly disadvantaged.

■ Finally, the court determines that Baker has generated a genuine issue of material fact on the fourth element, the 'inference of discrimination' element, *see Allen*, 214 F.3d at 980; *Keathley*, 187 F.3d at 921, which is cast in this case in terms of whether she has shown that a 'similarly situated' male employee was not denied equal access to bathroom facilities and did not have to perform additional job duties in the course of his employment. John Morrell concedes that Baker has satisfied this element with regard to her allegations that other men, including Alex, Quin Padilla, and Sam Munoz, were given more frequent and longer bathroom breaks than

she was afforded. However, John Morrell contends that this allegation is not actionable because it is untimely. Baker alleges that this conduct occurred between February 2000 and April 2001. Pl.'s Resistance to Dft.'s Mot. for Summary Judgment, at 23; *see* Pl.'s App., at 38–39. This creates a credibility issue for the jury and survives John Morrell's motion for summary judgment. This is also true of Baker's claims of disparate treatment pertaining to Brown's adding job duties to her job and denying Baker assistance. Baker contends that Alex, a male co-worker, who worked Baker's same job received assistance and was not responsible for the additional job responsibilities Brown imposed upon Baker, all of which, according to Baker, occurred after January 2000. Pl.'s App., at 38A–40, 53.

Therefore, the court assumes for the sake of this summary judgment motion that Baker can establish her *prima facie* case of disparate treatment, and therefore turns to the other prongs in the *McDonnell Douglas* analysis, as clarified in *Reeves.*

### 2. John Morrell's legitimate, non-discriminatory reasons

■ Under the burden-shifting analysis in *McDonnell Douglas,* because Baker has established her *prima facie* case of disparate treatment, John Murrell must "articulate a legitimate, nondiscriminatory reason for any adverse employment action taken." *Calder v. TCI Cablevision of Missouri, Inc.,* 298 F.3d 723, 728 (8th Cir.2002); *see Ross v. Kansas City Power & Light Co.,* 293 F.3d 1041, 1046 (8th Cir.2002). John Morrell alleges that Baker was denied access to bathroom facilities because the production line was running behind; and any increase in job duties came as a result of making Baker's worksite more safe. As addressed earlier, the other proffered reasons, categorical denials by Ridge and Brown that Baker was denied equal access

to bathroom facilities, are more appropriately protestations to the adversity of employment actions. In an abundance of caution, the court finds the evidence proffered by John Morrell in support of its legitimate, non-discriminatory reasons is just barely enough to satisfy its burden. However, a jury would require more evidence in addition to the minimal evidence in the record.

### 3. Proof of "pretext" and "intentional discrimination"

■ Thus, the court arrives at the third-stage of the *McDonnell Douglas* burden-shifting analysis. Baker assumes the burden of producing evidence that the proffered reasons were merely a pretext for discrimination. *See Reeves,* 530 U.S. at 143–44, 120 S.Ct. 2097; *Williams v. St. Luke's–Shawnee–Mission Health System, Inc.,* 276 F.3d 1057, 1058 (8th Cir.2002). Here, the issue is whether Baker can produce evidence that could lead a reasonable jury to believe that her denial of equal access to bathroom facilities and additional job duties were not really due to the production line running behind and her worksite being made safer, as John Morrell contends, but was instead due to her gender. As evidence of pretext, Baker argues that she was treated more harshly than male employees and required to do more work than her male counterparts who performed her same job duties on other shifts, and thus a reasonable jury could infer that the different treatment was due to her sex.

While instances of disparate treatment may support an inference of pretext, to prove disparate treatment, the plaintiff must show that he or she was "similarly situated in all relevant respects" to a non-member of the protected class who was more favorably treated. *Cronquist v. City of Minneapolis,* 237 F.3d 920, 927 (8th Cir.2001); *Harvey v. Anheuser–Busch,*

*Inc.*, 38 F.3d 968, 972 (8th Cir.1994); *Lanear v. Safeway Grocery*, 843 F.2d 298, 300 (8th Cir.1988) (citing *Smith v. Monsanto Chem. Co.*, 770 F.2d 719, 722 (8th Cir.1985), *cert. denied*, 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986)). In order to determine whether a plaintiff has shown that the employees involved were "similarly situated," the court considers, for example, whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Cronquist*, 237 F.3d at 927; *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1309 (8th Cir.1994); *Boner v. Board of Comm'rs of Little Rock Mun. Water Works*, 674 F.2d 693, 697 (8th Cir.1982). It is not up to the employer to prove dissimilarity. *Lanear*, 843 F.2d at 301 (citing *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1254 (8th Cir. 1981). "The test for whether employees are similarly situated to warrant a comparison to the plaintiff is 'rigorous.'" *Cronquist*, 237 F.3d at 927 (quoting *Harvey*, 38 F.3d at 972).

First, Baker alleges she was similarly situated to a male co-worker named Alex because he performed the same job as Baker, Computer Scale Operator, generally on shifts opposite Baker. Baker alleges that Brown required her to do the job of quality control employees and foreman. Alex was not required to perform these additional duties and moreover, received assistance when requested while Baker's repeated requests were consistently denied. On at least one occasion, Brown refused to allow Alex to help Baker and instead allowed him to stand around and massage Brown's shoulders while he was on the clock. Pl.'s App., at 55–56. Moreover, Baker alleges that after many years performing her same job, she was required to change the manner in which she did her job in order to accommodate Alex's prefer-

ences. Brown instructed Baker that Alex preferred the boxes being put on the line sideways or backwards rather than forwards, as Baker had been accustomed to for several years. Pl.'s App., at 39, 56. In addition, Baker performed tasks assigned to her male co-workers. For instance, she recalls having to tape boxes whenever the strapper machine broke down while the men who were responsible for the taping just stood around.

 Secondly, Baker alleges she was denied equal access to bathroom facilities on numerous occasions by her supervisor and foreman, Brown. Male employees working on the same end of the line as Baker, including Sam Munoz, Alex, Quin Padilla, and Jeff Eichmann were allowed to take bathroom breaks before Baker even though she had requested a bathroom break before them. Aside from being forced to wait for periods of time before she could use the bathroom, Baker was only allowed five-minute breaks whereas her counterpart, Alex, and these other male co-workers received thirty and forty-five-minute "spellouts" or breaks. Pl.'s App., at 40, 56; Def.'s App., at 38. Thus, the court concludes that Baker has generated genuine issues of material fact that John Morrell's proffered reasons for refusing her equal access and assistance were merely a pretext for discrimination and her assertion of disparate treatment withstands John Morrell's motion for summary judgment. The court finds that Baker has demonstrated, for purposes of summary judgment, that she is similarly situated to Alex, as well as male co-workers like Jeff Eichmann, Brian Murphy, and Quin Padilla who were assigned to the same end of the production line as Baker. Pl.'s App., at 40.

### B. Hostile work environment claim

 Baker has also asserted a claim of sexual harassment based upon a hostile

work environment. The five elements of a hostile work environment claim are that:

(a) she is a member in a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action.

*Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000). Based on the facts as outlined at *supra*, I.B., the court determines that the alleged sexual harassment was sufficiently severe and pervasive to affect a term, condition, or privilege of Baker's employment.[4] Therefore, the court finds that Baker has generated genuine issues of material fact concerning the sexual harassment she allegedly suffered

at the hands of John Morrell's non-supervisory and supervisory co-workers.

### C. Retaliation Claim

John Morrell contends that it is entitled to summary judgment on Baker's Title VII retaliation claim. Under the sexual discrimination provisions of Title VII, 42 U.S.C. § 2000e–3(a), an employer is forbidden to retaliate against employees for opposing sexual discrimination.[5] *Bogren v. Minnesota*, 236 F.3d 399, 407 (8th Cir. 2000), *cert. denied*, —— U.S. ——, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001); *Ogden v. Wax Works*, 214 F.3d 999, 1007 (8th Cir. 2000). That section of Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's "opposition" to an employment practice made unlawful under Title VII or because of the employee's "participation" in an investigation, proceeding, or hearing under Title VII. The Eighth Circuit Court

---

**4.** Baker regards Ron Ridge's conduct, pertaining to his refusing to allow her bathroom breaks, as amounting to both discrete discriminatory acts and actionable hostile work environment claims. Unlike instances of discrete discriminatory acts which occur on the day the act took place, the Court in *Morgan* found that hostile environment claims by their very nature are ongoing and involve repeated conduct. *Morgan*, —— U.S. at ——, 122 S.Ct. at 2073. The Court opined what should guide courts' determinations regarding whether they may review all hostile work environment claims for purposes of establishing liability.

A hostile work environment claim is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.' 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environ-

ment may be considered by a court for the purposes of determining liability.

*Id.* at 2074. As applied to the present case, Ron Ridge's conduct may be considered in assessing John Morrell's liability to Baker on her claims of hostile work environment if she successfully proves that such incidents are part of one unlawful employment practice. *Id.* at 2075.

**5.** Section 2000e–3(a) provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a).

of Appeals has distinguished between the activities protected by the two clauses of 42 U.S.C. § 2000e–3(a). *See Hunt v. Nebraska Pub. Power Dist.*, 282 F.3d 1021, 1028 (8th Cir.2002). The "opposition clause" prohibits· retaliation because the employee was "opposing any practice made unlawful by Title VII," while the "participation clause" prohibits retaliation because the employee was "participating in an investigation under Title VII." *Id.* Here, Baker has brought an "opposition" claim, grounded on her opposition to conduct in John Morrell's plant that she believed was in violation of Title VII.

As the Eighth Circuit Court of Appeals has explained, " 'To establish a prima facie case of Title VII retaliation, [the plaintiff] must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection [existed] between her protected activity and the adverse employment action.' " *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir.2001) (quoting *Bogren*, 236 F.3d at 407); *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 713–14 (8th Cir.2000). In addition, the Supreme Court, in *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001), set forth a reasonableness requirement that a plaintiff must satisfy in order to sustain his or her claims of retaliation. A plaintiff's proof of retaliation must be established such that a reasonable person could believe that the alleged incident would violate Title VII's standard. *Id.*

If the plaintiff meets this burden and establishes her *prima facie* case by a preponderance of the evidence, a presumption of discrimination arises. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. At this point, the plaintiff is entitled to judgment as a matter of law unless the defendant successfully rebuts the presumption. *See St. Mary's Honor Ctr.*, 509 U.S. at 502, 113

S.Ct. 2742 (1993). To rebut this presumption of discrimination, the burden falls to the defendant employer to "produc[e] evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. If the defendant meets this burden, "the *McDonnell Douglas* framework—with its presumptions and burdens"—disappears. *St. Mary's Honor Ctr.*, 509 U.S. at 510, 113 S.Ct. 2742. In this case, John Morrell argues that, even if Baker has established a *prima facie* case of discrimination, it rebutted any presumption of discrimination, having met its burden of production by proffering a legitimate, nondiscriminatory reason for her termination and its refusal to grant Baker vacation pay *i.e.*, that Baker violated the rules and policies of the Company when she walked off her job without notifying a supervisor or the plant's medical department and she had not accumulated the minimum number of work weeks needed to receive vacation pay.

Still, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. 2742, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual,' *Burdine, supra*, at 255, n. 10, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

John Morrell contends Baker fails to establish the second and third elements of her *prima facie* case for retaliation because she cannot demonstrate she suffered an adverse employment action or that the asserted adverse action was causally related to her complaints of sexual harassment and disparate treatment. John Morrell argues that Baker's allegations regarding her termination in December 1999, and Steve Joyce's refusal to grant her vacation pay do not rise to the level of an adverse employment action and are not casually related to her complaints.

In *Cherry v. Menard, Inc.*, 101 F.Supp.2d 1160 (N.D.Iowa 2000), this court explained the "adverse employment action" element as follows:

[N]ot everything that makes an employee unhappy is an actionable adverse action. *Montandon*, 116 F.3d at 359; *See also Manning v. Metropolitan Life Ins., Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997) (quoting *Montandon*). [T]he adverse action does not have to be a discharge, *see Manning*, 127 F.3d at 692 ("[A]ctions short of termination may constitute an adverse employment action within the meaning of [42 U.S.C. § 2000e3(a) ]."); *Kim v. Nash Finch, Co.*, 123 F.3d 1046, 1060 (8th Cir.1997) ("[R]etaliatory conduct may consist of 'action less severe than outright discharge,'" quoting *Dortz v. City of New York*, 904 F.Supp. 127, 156 (S.D.N.Y. 1995)), [but] the allegedly retaliatory conduct must nonetheless be " 'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or][c]hanges in duties or working conditions that cause no materially significant disadvantage." *Kim*, 123 F.3d at 1060 (some internal quotations and citations omitted) (citing *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994), and *Thomas v. St. Luke's Health Sys., Inc.*, 869 F.Supp. 1413, 1435 (S.D.Iowa 1994), *aff'd*, 61 F.3d 908 (8th

Cir.1995) (table) (No. 94–4081)). In *Kim*, the Eighth Circuit Court of Appeals explained that what the court must look for is "the kind of serious employment consequences that adversely affected or undermined [the employee's] position, even if [s]he was not discharged, demoted or suspended." *Kim*, 123 F.3d at 1060. Furthermore, the court may examine the cumulative effect of the employer's allegedly retaliatory actions, rather than determining whether any individual action upon which the claim relies was sufficiently adverse. *Id.*

(quoting *Delashmutt v. Wis–Pak Plastics, Inc.*, 990 F.Supp. 689, 699 (N.D.Iowa 1998)); *see also Coffman*, 141 F.3d at 1245 (citing *St. Louis Univ.*, 109 F.3d at 1266) ("[N]ot everything that makes an employee unhappy is an actionable adverse action.").

### 1. Baker's evidence of adverse action

In determining that Baker established a *prima facie* case of disparate treatment, the court found that Baker's alleged evidence of denial of equal access to bathroom facilities, having additional job responsibilities added to her job, and denials of assistance, at a minimum generated genuine issues of material fact as to whether her working conditions were materially and significantly disadvantaged. Baker's foreman, Brown, was the perpetrator of this conduct and commenced upon this manner of discrimination *after* Baker filed her charge of discrimination with the ICRC and EEOC in January 2000, and *after* Brown was questioned in connection with the investigation. Moreover, Baker complained to Steve Joyce on June 28, 2000, that Brown, her supervisor, had told her to "shut-up." Brown admits to shouting at Baker to "shut-up." Baker argues that Brown did not stop there, but told Baker that "she 'was sick' of Baker's

'shit,' and that Baker 'drug her' into the 'whole mess'" between Baker and Eichmann. Pl.'s App., at 11.

In addition, Baker argues that Eichmann's and Murphy's conduct seriously undermined her position with John Morrell. Besides Eichmann and Murphy making Baker's job more difficult by shutting off the line, sending boxes facing the wrong direction, and verbally and physically threatening her in retaliation for her complaints, they created an environment that culminated in Baker's suffering a panic attack and leaving the plant to seek the help of a medical doctor. This resulted in Baker's termination of employment with John Morrell. Baker's termination constituted an adverse employment action even though she was subsequently rehired. Baker also offers evidence that her doctor prescribed medication to help her cope with the anxiety and resulting depression she developed as a result of the continuing sexual harassment, which on more than one occasion, caused her to take a medical leave of absence from work, impeding her future job prospects with John Morrell.

Furthermore, Baker asserts that the cumulative effect of all of the adverse employment actions taken by John Morrell resulted in her constructive discharge, which is nothing short of an adverse employment action. *See Jaros v. LodgeNet Entertainment Corp.*, 294 F.3d 960, 966 (8th Cir.2002) (finding that constructive discharge constitutes a tangible employment action). The court concludes that a reasonable person could find Baker's evidence of alleged incidents of retaliation to be a violation of Title VII. *See Buettner,* 216 F.3d at 713–14. For these reasons, the court finds that Baker has satisfied her burden of establishing genuine issues of material fact pertaining to adverse employment actions taken by John Morrell.

### 2. *Baker's evidence of causal connection*

John Morrell relies upon the Eighth Circuit Court of Appeals' holding in *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 970 (8th Cir.1999), to support its assertion that no causal connection existed between Baker's complaints of harassment and the termination of her employment with John Morrell on January 5, 2000. The court in *Scusa* found that even if a complaining party could prove that her co-workers' behavior constituted an adverse employment action, the court could not infer, without more, that the co-workers' behavior was caused by the employer. *Id.* Thus, John Morrell argues that Baker fails to establish that Eichmann's and Murphy's behavior were somehow caused by management or that management, independent of Eichmann and Murphy, engaged in retaliatory conduct. John Morrell claims that Steve Joyce did not engage in retaliatory conduct when he decided to terminate Baker because he did not know that Baker was alleging that Eichmann and Murphy were sexually harassing her.

In her resistance, Baker contends that although she may not have used the term "sexual harassment" when she complained to Joyce prior to December 1999, the substance of her complaints were an indication to Joyce that she was the target of sexual harassment. In support of her assertion, Baker identifies, and both parties agree, at least two occasions in the months leading up to her termination that she met with Joyce about Eichmann's conduct. First, in September 1999, Baker complained to Joyce about Eichmann's constant teasing and his placement of the boxes on the line backwards, making her job more difficult. It was at this meeting that Joyce told Baker he believed that Baker and Eichmann had a "hard-on" for each other. Pl.'s App., at 6. It was but a few weeks later

when Baker complained again to Joyce about Eichmann's conduct. In November 1999, Baker attempted to meet with Joyce yet again, this time in regard to the rumors Murphy was spreading around the plant about Baker being "good in the sack" and that he had been to her home and she met him at the door in her robe with her "tits hanging out," as well as about how she was being treated by Eichmann. Baker addressed her complaint to Brown, her foreman, and requested to see Joyce about the same. However, Brown told Baker that Joyce did not want to see Baker because he was tired of all the problems between Baker and Eichmann. Pl.'s App., at 35.

Based upon the record, the court finds that both John Morrell and Baker either disagree or are unclear about what job responsibilities were added to Baker's job and when. However, the court must view all the facts in the light most favorable to the nonmoving party, here Baker, and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same). Thus, the court reasons that Baker's complaints against Brown, based on Brown's conduct which arose after Baker filed her EEOC complaint, and the adverse employment action—Baker's constructive discharge, create a genuine issue of material fact regarding the closeness in time of these events that may justify the trier of fact inferring retaliatory motive. *See Bassett v. City of Minneapolis*, 211 F.3d 1097, 1104 (8th Cir.2000) (finding less than two months between filing charge of discrimination and adverse action coupled with subsequent wave of increasing levels of disciplinary action created inference of causal connection). *But see Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.) (en banc), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999) ("Gen-

erally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation.").

The disputes between the parties demonstrates several factors from which a trier of fact might infer a causal link between Baker's complaining of the alleged discrimination and her termination and constructive discharge.

 Assuming Baker has established her *prima facie* case of retaliation, the burden shifts to John Morrell to articulate a legitimate, nondiscriminatory reason for its actions, and, if the employer meets that burden, the presumption of retaliation disappears. *Buettner*, 216 F.3d at 713–14. John Morrell avers that it terminated Baker in December 1999, because she failed to follow the rules and polices of the company when she abandoned her job without notifying a supervisor or the plant's medical department. However, based on the summary judgment record as discussed in detail above, Baker has demonstrated sufficient evidence, if believed, that the reason given for her termination was a pretext for the true reason her employment was terminated—retaliation for her reporting Eichmann's and Murphy's sexual harassment.

### D. Constructive Discharge

#### 1. Proof of constructive discharge

 Because Baker has generated a genuine issue of material fact that she was retaliated against with adverse employment actions, the court must also consider whether Baker has generated a genuine issue of material fact that those adverse actions as well as the sexual harassment and disparate treatment, led to her constructive discharge. To constitute a constructive discharge, a plaintiff must show more than just a Title VII violation by her

employer. *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir.1998). A constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable and thus forces him to quit his job. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir.1999) (citing *Kimzey*, 107 F.3d at 574); *see also Johnson v. Runyon*, 137 F.3d 1081, 1083 (8th Cir.) (internal quotations omitted), *cert. denied*, 525 U.S. 916, 119 S.Ct. 264, 142 L.Ed.2d 217 (1998) ("A constructive discharge occurs when an employer renders the employee's working conditions intolerable, forcing the employee to quit."); *Summit v. S–B Power Tool*, 121 F.3d 416, 421 (8th Cir.1997) (internal quotations omitted), *cert. denied*, 523 U.S. 1004, 118 S.Ct. 1185, 140 L.Ed.2d 316 (1998) (citing same). The intent element is satisfied by a demonstration that quitting was "a reasonably foreseeable consequence of the employer's discriminatory actions." *Id.* The employee has an obligation to act reasonably by not assuming the worst and not jumping to conclusions too quickly. *See Howard v. Burns Bros., Inc.*, 149 F.3d 835, 841–42 (8th Cir.1998).

" '[I]ntolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings.' " *Gartman v. Gencorp, Inc.*, 120 F.3d 127, 130 (8th Cir.1997) (quoting *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir.1996)). First, the conditions created by the employer must be such that a reasonable person would find them intolerable. *See Gartman*, 120 F.3d at 130; *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996); *Parrish v. Immanuel Medical Ctr.*, 92 F.3d 727, 732 (8th Cir. 1996); *Allen*, 81 F.3d at 796; *Bradford v. Norfolk S. Corp.*, 54 F.3d 1412, 1420 (8th Cir.1995); *Smith*, 38 F.3d at 1460; *Hukkanen v. International Union of Operating Eng'rs, Hoisting & Portable Local No. 101*, 3 F.3d 281, 284 (8th Cir.1993). Second, the employer's actions "must have been deliberate, that is, they 'must have been taken with the intention of forcing the employee to quit.' " *Delph*, 130 F.3d at 354 (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981)); *Gartman*, 120 F.3d at 130; *Tidwell*, 93 F.3d at 494; *Parrish*, 92 F.3d at 732; *Allen*, 81 F.3d at 796; *Smith*, 38 F.3d at 1461; *Hukkanen*, 3 F.3d at 284. The Eighth Circuit Court of Appeals has explained that, "in the absence of conscious intent . . ., the intention element may nevertheless be proved with a showing that the employee's 'resignation was a reasonably foreseeable consequence' of the [discriminatory or retaliatory conduct]." *Delph*, 130 F.3d at 354 (quoting *Hukkanen*, 3 F.3d at 285); *Gartman*, 120 F.3d at 130 (also citing *Hukkanen* ). Finally, "to act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly"; therefore, "[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995).

The Eighth Circuit Court of Appeals has affirmed constructive discharge verdicts, emphasizing the employee's lack of recourse within the employer's organization. For example, in *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 356–57 (8th Cir.1997), the Eighth Circuit Court of Appeals upheld a constructive discharge verdict based on a hostile environment. The *Delph* court held that the hostile environment was bad enough to constitute constructive discharge, because the harassment—racial slurs—came from the plaintiff's supervisor and the offending language was not only used in the plaintiff's presence, but was directed at him. *Id.* at 356. In *Kimzey v. Wal–Mart Stores, Inc.*, 107 F.3d 568, 574 (8th Cir. 1997), the Eighth Circuit Court of Appeals

emphasized management's indifference to the employee's complaints of hostile environment in affirming the plaintiff's verdict on constructive discharge: "If an employee quits because she reasonably believes there is no chance for fair treatment, there has been a constructive discharge." *Id.* at 574.

### 2. Baker's evidence of constructive discharge

John Morrell claims that Baker failed to prove that she was constructively discharged. John Morrell claims that Baker failed to report many of the instances of sexual harassment and disparate treatment to John Morrell management that she alleges occurred, and concerning the conduct that Baker reported to management, John Morrell claims that it promptly investigated and remedied the discrimination.

The court concludes that Baker has generated genuine issues of material fact precluding summary judgment in John Morrell's favor on her constructive discharge claim. There exists a genuine issue of material fact as to the adequacy of John Morrell's response to Baker's complaints of both sexual harassment and disparate treatment. Baker acknowledges that Joyce spoke with Eichmann on several occasions and placed a letter of reprimand in Eichmann's file. However, Baker points out that Eichmann was not subjected to any further disciplinary action, even considering Eichmann's testimony that two other female employees of John Morrell, Georgia Risley and Karen Harms, complained to Joyce about his behavior. Hence, Baker argues Eichmann merely received a slap on the wrist, whereas, when Baker is forced to leave work due to the "debilitating emotional and physical affects the harassment had on her, she is fired." Pl.'s Resistance to Def.'s Mot. for Summary Judgment, at 28.

John Morrell argues that Baker failed to communicate *all* of her complaints to management, and instead complained on occasion to Union Representatives, Warren Baker and Ron Haase, preventing John Morrell management from addressing *some* of Baker's complaints. However, both Warren Baker's and Ron Haase's testimony reflects their assurances to Baker that they would notify management with the complaints, and in fact state that each time Baker complained, they confronted management with the matter. In response to Baker's complaints about Eichmann, Baker charges, and Joyce admits, to having stated that he believed Baker and Eichmann had a "hard-on" for each other. This made Baker uncomfortable and deterred her from coming to Joyce with future complaints. When Baker sought Brown's permission to see Joyce about her male co-workers' conduct, Brown told Baker that Joyce was tired of all of her problems. When Baker communicated this to Warren Baker, he told her that this was due to Denny Reitz's complaint to Joyce that Baker and Brown were going up to personnel too often. Finally, Brown herself admits to becoming upset at Baker and shouting at her to "shut-up," which Baker contends was only a part of what Brown said to Baker. According to Baker, Brown told Baker she "was sick" of her "shit." Pl.'s App., at 11. Therefore, the court concludes that Baker's testimony that John Morrell either ignored or ridiculed her complaints generates a genuine issue of material fact that a reasonable person would find that the conditions created by John Morrell were intolerable. *See Delph,* 130 F.3d at 356.

In addition, regarding the issue of John Morrell's intent to force Baker to quit, Baker's evidence that John Morrell's director of human resources, Steve Joyce, and supervisors Kathi Brown, Denny Reitz, and Russ Mitchell, ignored or ridiculed her complaints and requests to put a

stop to the discriminatory work environment also generate a genuine issue of material fact as to whether resignation was a reasonably foreseeable consequence of the [retaliatory conduct]. *Delph,* 130 F.3d at 354 (quoting *Hukkanen,* 3 F.3d at 285). As this court stated in *Delashmutt,* 990 F.Supp. at 703, "[i]t is reasonably foreseeable that a person who finds all of her attempts to improve intolerable working conditions foreclosed will quit, rather than continue to suffer the intolerable conditions."

The Eighth Circuit Court of Appeals recently explained that a plaintiff asserting a constructive discharge "is required to prove that the [employer] knew or should have known of the alleged harassment, because '[a]n employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged.'" *Willis v. Henderson,* 262 F.3d 801, 810 (8th Cir.2001) (quoting *Tidwell v. Meyer's Bakeries, Inc.,* 93 F.3d 490, 494 (8th Cir.1996)). The court finds that there is at least a fact question as to whether or not John Morrell was afforded a reasonable opportunity to work out the problem because Baker filed her charge of discrimination in January 2000, making explicit her complaints to John Morrell, but remained with John Morrell up until April 2001, at which time she asserts she was constructively discharged. Therefore, John Morrell is not entitled to summary judgment on Baker's claim that she was constructively discharged. *See* FED. R. CIV. P. 56(c) (summary judgment may only be granted where the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.").

## IV. CONCLUSION

The court concludes that genuine issues of material fact preclude summary judgment on Baker's disparate treatment and sexual harassment hostile work environ-

ment claims. The court also concludes that Baker has established a *prima facie* case of retaliation and constructive discharge, thus precluding summary judgment on these claims. Therefore, John Morrell's **motion for summary judgment is denied in its entirety.**

IT IS SO ORDERED.